NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERCIA,** | **Civil Action No. 09-5692 (PGS)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **PECHINEY PLASTICS PACKAGING, INC.,** | |
| **Defendant.** | |

**BONGIOVANNI, Magistrate Judge**

Pending before the Court is Plaintiff United States of America's (the "United States") motion for a protective order concerning certain Environmental Protection Agency (the "EPA") and United States Geological Survey (the "USGS") documents that the United States claims are protected by the deliberative process privilege. Defendant Pechiney Plastics Packaging, Inc. ("PPPI") opposes the United States' motion. The Court has reviewed all arguments made in support of and in opposition to the United States' motion. The Court considers the United States' motion without oral argument pursuant to FED.R.CIV.P. 78. For the reasons stated more fully below, the United States' motion for a protective order is GRANTED in part and DENIED in part.

### I. Background

The United States instituted this civil action against PPPI on November 6, 2009 pursuant to Sections 107 and 113(b) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(b). Through this cost recovery matter, the United States seeks to recover certain costs incurred or to be incurred

by the EPA in connection with the release or threatened release of hazardous substances into the environment at or from the Pohatcong Valley Groundwater Contamination Superfund Site (the "Site").  The Site is comprised of approximately ten square miles and is located in Warren County, New Jersey.  The United States seeks to recover approximately $24 million in costs for work done in relation to the Site and its cost claims extend for a time span of approximately 26 years.

To date, the parties have been actively engaged in fact discovery.  As can be imagined, given the monetary and temporal scope of this cost recovery action, several discovery issues have arisen during the pendency of this matter.  One such issue currently pending involves the United States' assertion (made on behalf of the EPA and USGS) of the deliberative process privilege over 236 electronic documents and 4 folders of hardcopy documents from the USGS. PPPI brought this issue to the Court's attention when it submitted its letter dated June 20, 2012 requesting that the Court compel the United States to produce the documents over which the United States had claimed the deliberative process privilege or to submit them to the Court for an *in* camera review.  (Letter from Barabara Magel to Hon. Tonianne J. Bongiovanni, U.S.M.J. of 6/20/2012 (the "L.Civ.R. 37.1 Letter")).  The United States responded to PPPI's letter application by filing the instant motion to compel. The Court addresses this issue herein.

## II.     The Parties Arguments

### A.  The United States' Position

The United States argues that the deliberative process privilege applies to the aforementioned 236 electronic documents and 4 folders of hardcopy documents because these documents "reflect advisory opinions, recommendations, and deliberations that comprise part of a process by which the Agencies formulated decisions and policies related to the . . . Site."

(United States Br. at 1; Docket Entry No. 50-1).  Of the documents withheld, the United States

claims that:

- 156 are drafts of the EPA's Proposed Remedial Action Plan ("PRAP") for the Site, the final version of which was released to the public for comment (these documents are referred to as "Category A" in the Enck Declaration);

- 13 are documents withheld by the EPA, which include:

  - 10 separate documents that comprise 3 email chains between EPA Region II subordinates and EPA Headquarters' Remedy Coordinator, EPA Headquarters' Office of Superfund Remediation & Technology Innovation reviewers, and Emergency and Remedial Response Division ("ERRD") officers that discuss recommendations and comments of the draft PRAP for the site as well as the draft Operable Unit 1 Record of Decision ("ROD") (these documents are referred to as "Category B" in the Enck Declaration);

  - a draft of a portion of the EPA's Feasibility Study at the Site, which contains "an EPA official's 'candid evaluation of site conditions and propose[d] recommended clean up action . . .'" (*Id*. at 11 (quoting Enck Dec'l at ¶ 6(D)));

  - 2 memoranda that contain recommendations regarding the EPA's selection of a groundwater remedy at the Site; and

- the remainder reflect the USGS's draft manuscripts, draft models and associated peer reviews concerning the following three reports published by the USGS in response to the EPA's request that the USGS conduct hydrogeological investigations and groundwater flow assessments of the Pohatcong Valley to assist the EPA in evaluating groundwater contamination alternatives:

  - "Hydrogeology and Simulation of ground-water flow in, the Pohatcong Valley, Warren County, New Jersey:  U.S. Geological Survey Scientific Investigations Report 2006-5269," 66p.;

  - "Aquifer properties, stream base flow, water use, and water levels in the Pohatcong Valley, Warren County, New Jersey:  U.S. Geological Survey Scientific Investigations Report 2004-5127," 64p.; and

> ○ "Use of low cost plastic liners to temporarily seal, collect water samples from, and measure water levels in boreholes open to bedrock," Proceedings of the 34th Mid-Atlantic Industrial and Hazardous Waste Conference, September 20-21, 2002, New Brunswick, New Jersey: pp. 311-321.

The United States claims that all of the aforementioned documents have been appropriately withheld pursuant to the deliberative process privilege.  In this regard, the United States claims that it has satisfied all of the procedural requirements associated with asserting the privilege because

> the Agencies have:  (1) submitted a formal claim of privilege over these documents as articulated in the Declarations of Judith Enck, the Regional Administrator of EPA Region II, and Richard Kropp, the Director of USGS New Jersey Water Science Center, after consideration of the documents by these officials; (2) articulated in the Enck and Kropp Declarations the precise and certain reasons for asserting the privilege (See:  Enck Dec'l at ¶¶ 5, 6(A)-(F), Kropp Dec'l at ¶ 5 and Exhibit 1); and (3) identified and described the documents sought to be protected by [the] deliberative process privilege (See:  Enck Dec'l at ¶ 6(A)-(F), Kropp Dec'l at Exhibit 2).

(United States Br. at 10).  The United States likewise claims that it has satisfied the substantive requirements of the deliberative process privilege by establishing that the above-described documents are both pre-decisional and deliberative.

With respect to the draft PRAPs, *i.e.*, Category A, the United States argues that these documents are "clearly pre-decisional" because "they start with a range of alternatives and exist to assist Agency decision–makers in arriving at a future particular decision – the preferred remedial action alternative for a site."  (*Id.* at 10-11)  As noted above, the final PRAP, which contains the EPA's description of "the remedial alternatives analyzed, its review of the

alternatives against the nine criteria [specified in 40 C.F.R. § 300.430(c)], and its identification of and justification for the preferred remedial action[,]" is released to the public. (*Id.* at 3).

The United States further argues that the draft PRAPs are also clearly deliberative.  In this regard, the United States contends that the "draft PRAPs evolve over time to reflect and incorporate the opinions, recommendations and deliberations of Agency officials."  (*Id.*)  For example, the United States argues that "[t]he draft PRAPs and related correspondence at issue here reflect subordinate recommendations to ERRD officials, and ultimately, the ERRD Director's formal approval of the preferred remedy."  (*Id.* at 4).  Indeed, the United States claims that the very nature of the draft PRAPs make them deliberative documents in that "they reflect, oftentimes in redline annotations and textual edits, the give and take of the consultation process." (*Id.* at 3).  The United States argues that the "exchange of ideas, language and comments" memorialized in the draft PRAPS is "integral to the deliberative, remedy selection process" and the forced disclosure of same would "inhibit frank and open discussion of Agency personnel in future remedy-selection decisions at CERCLA Superfund sites nationwide."  (*Id.* at 10 (citing *Kidd v. Dep't of Justice*, 362 F.Supp. 2d 291, 296 (D.D.C. 2005))).

In addition, the United States contends that the remaining 13 documents withheld by the EPA are pre-decisional and deliberative.  With respect to the 3 email chains, the United States argues that they are pre-decisional because they involve "deliberations and opinions that were made in the course of an on-going remedy selection decision making process[.]"  (Enck Dec'l at ¶ 6(B)).  Indeed, the United States notes that these emails contain "recommendations and comments on the Draft PRAP and draft Operable Unit 1 Record of Decision."  (United States Br. at 11).  Further, the United States argues that these emails are deliberative because they disclose staff discussions, evaluations and recommendations made to the relevant Agency officials during

the course of an ongoing CERCLA decision-making process in order to develop a final cleanup decision.  (Enck Dec'l at ¶ 6(B)).  As such, the United States argues that these emails are deliberative because they "contain recommendations and personal opinions concerning the formulation of official Agency policy."  (*Id.*)

Similarly, the United States maintains that the draft of a portion of a Feasibility Study concerning the Site is pre-decisional because it was made "in the course of an ongoing internal decision-making process, ultimately leading to the development of a final decision endorsed by the Agency in its ROD for Operable Unit 1."  (Enck Dec'l at ¶ 6(D)).  Further, the United States claims that this document is deliberative because it "contains the candid evaluation of site conditions and proposes a recommended clean up action for Operable Unit 1."  (*Id.*)

The United States likewise argues that the two memoranda that contain recommendations regarding the EPA's selection of a groundwater remedy at the Site are pre-decisional because they were made during the ongoing CERCLA decision-making process regarding what groundwater remedy should be selected for the Site.  Further, the United States claims that these memoranda are deliberative because the first "contains the personal recommendations and opinions of the technical reviewer concerning the formulation of official agency policy regarding the selection of the appropriate cleanup number" (*Id.* at ¶ 6(C)) and the second "presents the concerns, comments, and positions raised by the NJDEP on EPA's remedial approach for the . . . Site" and "was made as part of EPA's obligations to ensure meaningful and substantial State involvement in EPA's implementation of CERCLA."  (*Id.* at ¶ 6(E)).

Finally, the United States argues that the USGS draft manuscripts, draft models and associated peer reviews are pre-decisional and deliberative.  The United States contends that these documents are pre-decisional because "they reflect the creation of a formal USGS policy or

interpretation (as articulated in the published USGS SIR report or conference proceeding) such that the disclosure of these unapproved manuscripts, models and associated peer reviews may cause incorrect or incomplete information to be ascribed to the USGS." (United States Br. at 11). The United States claims that these documents are deliberative because they "reflect the iterative exchange of ideas and opinions among Agency staff concerning the groundwater data and flow assumptions utilized by USGS officials in their analysis of the Pohatcong Valley aquifer, the policy interpretations and conclusions drawn there from, while also proposing alternative groundwater-flow interpretations for consideration." (*Id.*)

Based on the foregoing, the United States argues that it has established a *prima facie* case that the documents at issue are protected by the deliberative process privilege.[1] Further, the United States argues that PPPI cannot meet its burden of establishing a substantial need for the deliberative documents. In this regard, the United States contends that PPPI has identified the following three reasons why the United States should be compelled to produce the withheld documents: "(1) the factual content of these documents is severable from the deliberative content; (2) [] the documents 'address the central factual issues in this case dealing with costs allegedly incurred in relation to groundwater and source characterization'; and (3) [] PPPI is, as a general matter, 'entitled to full discovery to defend itself against the government's lawsuit and allegations.'" (*Id.* at 12 (quoting PPPI's L.Civ.R. 37.1 Letter at 11)). The United States argues that none of these contentions overrides the presumption against disclosure to which the United States is entitled in light of its *prima facie* showing that the deliberative process privilege applies.

---

[1] The United States does not believe that an *in camera* review of the documents at issue is necessary; however, to the extent the Court determines that such an inspection is warranted, the United States has agreed to produce all or a subset of the documents at the Court's direction.

With respect to PPPI's contention that the factual content contained in the documents at issue here can be severed from the deliberative content, the United States disagrees.  While the United States acknowledges that the documents contain some factual information, the United States argues that this information is not severable.  For example, with respect to factual information contained in the draft PRAPs concerning the soil and groundwater conditions at the Site, the United States claims that "the groundwater and soil datum that underlie the Agency's deliberations of an appropriate groundwater and soil remedy at the Site is so thoroughly integrated in the draft PRAPs and related memoranda that any attempt to segregate out factual information would reveal EPA's deliberations."  (*Id*. at 13).  Similarly, the United States claims that "the USGS draft manuscripts at issue contain both integrated factual material and factual material that itself reflects the Agency's deliberative process."  (*Id*.)  Indeed, the United States claims that "when a USGS peer review selects specific groundwater values or aquifer tests to discuss and interpret – out of a larger group of facts – that very act is deliberative in nature." (*Id*.)  Moreover, the United States maintains that PPPI already has the groundwater and soil sampling data that underlies the agencies' deliberations reflected in the draft PRAPs and USGS published reports because the United States has already produced same.  Consequently, the United States argues that any factual information contained in the documents at issue is redundant of information already produced.

As to PPPI's contention that the documents at issue "address the central factual issues in this case dealing with costs allegedly incurred in relation to groundwater and source characterization" (*Id.* at 12 (quoting PPPI's L.Civ.R. 37.1 Letter at 11)), the United States claims that this is not so because the draft PRAPs and USGS draft reports do not discuss costs incurred at the Site.  Instead, the United States argues that the draft PRAPs only include as one of the nine

evaluative criteria "a consideration of the potential costs of each alternative remedy." (*Id*. at 14). Further, the United States claims that that analysis is "much different" and bears "little to no relevance to the United States' claim against PPPI in this litigation for actual response costs incurred." (*Id.*) Moreover, the United States again argues that it has already produced all information concerning the "costs allegedly incurred" at the Site when it produced a SCORPRIOS Report to PPPI on March 12, 2012. Likewise the United States claims that it also has produced the Agency's consideration of the potential costs of other considered remedies at the Site as this information is contained in the produced final PRAP and Operable Unit 1 ROD.

Lastly, the United States argues that contrary to PPPI's third contention, PPPI's right to discovery is not absolute; instead it is bounded by the Federal Rules of Civil Procedure and applicable case law. Here, the United States claims that PPPI's entitlement to full discovery is "cabined by the United States' right to object to the production of certain relevant documents as privileged[.]" (*Id*. at 15). The United States also claims that PPPI's entitlement to full discovery is not a factor to be considered in determining whether PPPI, the party requesting discovery has met its burden of overcoming the deliberative process privilege. For these reasons, the United States requests that the Court grant the requested protective order.

### B.  PPPI's Position

PPPI opposes the United States' motion for a protective order for several reasons. As an initial matter, PPPI objects to the fact that PPPI filed its motion without the Court ever issuing an order permitting the United States to do so. While PPPI acknowledges that the United States informed the Court via letter dated June 29, 2012 that it intended to file the instant motion, PPPI argues that the United States' motion is procedurally improper because the Court never gave the United States permission to do so; instead, the United States presumptively filed same. PPPI

argues that the United States' presumptive filing renders L.Civ.R. 37.1(a)(1) a nullity. Consequently, PPPI argues that the Court should deny PPPI's motion because it is procedurally improper.

PPPI also claims that the United States' motion should be denied, at least with respect to a subset of documents, because the United States' privilege log concerning a number of documents over which the United States asserts the deliberative process privilege is insufficient under Rule 26(b)(5). PPPI notes that Rule 26(b)(5) requires the party asserting a privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected will enable other parties to assess the claim." PPPI identifies 53 documents for which it contends the United States' claim of the deliberative process privilege fails because the United States' privilege log fails to provide the basic information required by Rule 26(b)(5). (PPPI Opp. Br. at 9-10) In this regard, PPPI claims that the United States did not provide the following required information for the 53 documents: "who the document was drafted by, who received or reviewed the document, or even the date of the document." (*Id*. at 10). The specific documents at issue are identified in the following table by their beginning Bates numbers:

| | | | |
|---|---|---|---|
| PO-EPA297899 | PO-EPA305813 | PO-EPA307493 | PO-EPA308993 |
| PO-EPA297919 | PO-EPA305887 | PO-EPA308659 | PO-EPA309013 |
| PO-EPA304449 | PO-EPA305907 | PO-EPA308681 | PO-EPA309033 |
| PO-EPA305578 | PO-EPA305927 | PO-EPA308703 | PO-EPA309053 |
| PO-EPA305600 | PO-EPA305947 | PO-EPA308725 | PO-EPA309073 |
| PO-EPA305622 | PO-EPA305967 | PO-EPA308747 | PO-EPA309093 |
| PO-EPA305644 | PO-EPA305987 | PO-EPA308769 | PO-EPA309113 |
| PO-EPA305666 | PO-EPA306007 | PO-EPA308791 | PO-EPA309133 |
| PO-EPA305688 | PO-EPA306027 | PO-EPA308812 | PO-EPA309152 |
| PO-EPA305710 | PO-EPA306047 | PO-EPA308832 | PO-EPA309171 |
| PO-EPA305731 | PO-EPA306066 | PO-EPA308857 | PO-EPA309190 |
| PO-EPA305751 | PO-EPA306085 | PO-EPA308878 | |
| PO-EPA305771 | PO-EPA306104 | PO-EPA308899 | |
| PO-EPA305792 | PO-EPA307238 | PO-EPA308973 | |

Because the United States' claim of privilege with respect to these 53 documents does not satisfy Rule 26(b)(5) and because the United States failed to even address this deficiency in its motion, despite the fact that PPPI raised it in its L.Civ.R. 37.1 Letter, PPPI claims that the United States should be compelled to produce the 53 documents now.

Similarly, PPPI takes issue with the United States' withholding of the following 24 documents listed in the Enck Declaration:

| PO-EPA321737-756 | PO-EPA339310-311 | PO-EPA414539-558 | PO-EPA190754 |
|---|---|---|---|
| PO-EPA336173-192 | PO-EPA339676-695 | PO-EPA187350-1 | PO-EPA396909[2] |
| PO-EPA336389-408 | PO-EPA340901-920 | PO-EPA359064-6 | PO-EPA373770 |
| PO-EPA336520-539 | PO-EPA359606-625 | PO-EPA338708-9 | PO-EPA396740-2 |
| PO-EPA337601-619 | PO-EPA389932-951 | PO-EPA187459-60 | PO-EPA215396 |
| PO-EPA338962-976 | PO-EPA404744-765 | PO-EPA185954 | PO-EPA286869[3] |

As with the 53 document identified above, the United States claims that these 24 documents are protected by the deliberative process privilege.  While PPPI acknowledges that the Enck Declaration provides some details regarding the aforementioned 24 documents, PPPI argues that the details provided are insufficient to allow PPPI to determine whether the documents are in fact covered by the deliberative process privilege.  Specifically, PPPI claims that "the documents are not described in a privilege log with sufficient details under Rule 26(b)(5), as the United States does not provide the author, recipient, date, and nature of the documents – all of which are necessary to determine whether the deliberative process privilege applies."  (*Id*. at 11).  As a result, PPPI argues that the United States should be forced to produce these documents now.  Moreover, as with the 53 documents identified above, PPPI contends that these 24 documents should not only be produced now because the United States failed to sufficiently invoke the deliberative process privilege over same, but because the United States again failed to address

---

[2] This document is also Bates stamped PO-EPA185954.
[3] This document is a duplicate of PO-EPA215396 with additional Bates number.

the deficiencies with its claim of privilege in its pending motion for a protective order despite the fact that PPPI raised same in its L.Civ.R. 37.1 Letter.

In addition, PPPI argues that, at a minimum, the United States should be compelled to produce the factual material contained in the documents it is withholding.  PPPI notes that the United States "argues that the agency deliberative processes and factual material in the documents identified in the Enck and Kropp Declarations are intertwined such that the factual material cannot be produced."  (*Id*. at 12).  PPPI, however, argues that the United States has "fail[ed] to provide any justification for this self-serving conclusion."  (*Id*.)  Instead, PPPI argues that a review of the Declarations shows that the United States is attempting to protect purely factual, severable data.

Beginning with the Kropp Declaration, PPPI argues that the following 4 hard-copy files and 40 electronic files listed therein appear to contain factual material that should be produced:

**Hard Copy Files**

- 1 folder containing review copies of a journal article describing low-cost plastic borehole liners (0.5-inches thick)

- 1 folder containing draft copies of text, figures, and tables for the framework report (SIR 2004-5127) (1.75-inches thick)

- 1 folder containing draft copies of text, figures, and tables for the modeling report (SIR 2006-5269) (1.5-inches thick)

- 1 folder containing review copies of the modeling report (2-inches thick)

**Electronic Files**

| | | | |
|---|---|---|---|
| EPASFC-0000783.PDF | PO-USGS009687.PDF | PO-USGS008284.PDF | PO-USGS010205.PDF |
| EPASFC-0000843.PDF | PO-USGS002495.PDF | PO-USGS008387.PDF | PO-USGS002555.PDF |
| PO-USGS009026.PDF | PO-USGS007515.PDF | PO-USGS008515.PDF | PO-USGS002586.PDF |
| PO-USGS009249.PDF | PO-USGS007532.PDF | PO-USGS008643.PDF | PO-USGS007346.PDF |
| PO-USGS009280.PDF | PO-USGS007647.PDF | PO-USGS009039.PDF | PO-USGS008927.PDF |
| PO-USGS009313.PDF | PO-USGS007656.PDF | PO-USGS009061.PDF | PO-USGS008935.PDF |
| PO-USGS009351.PDF | PO-USGS007751.PDF | PO-USGS009531.PDF | PO-USGS009674.PDF |
| PO-USGS009394.PDF | PO-USGS007846.PDF | PO-USGS009680.PDF | PO-USGS010103.PDF |
| PO-USGS009439.PDF | PO-USGS007939.PDF | PO-USGS010101.PDF | PO-USGS010199.PDF |
| PO-USGS009483.PDF | PO-USGS008055.PDF | PO-USGS010197.PDF | PO-USGS010212.PDF |

For example, PPPI notes that one of the documents listed in the Kropp Declaration, EPASFC-0000783.PDF, is "described as 'analysis of aquifer tests, stream baseflow water use and water levels in Pohatcong valley, Warren Co, NJ.'" (*Id*. at 13-14 (quoting L.Civ.R. 37.1 Letter, Ex. Q at 10)). From this description, PPPI surmises that the USGS collected data "related to aquifer tests, stream baseflow water use and water levels that are relevant and purely factual, with additional analysis by the USGS." (*Id*. at 14). Similarly, PPPI notes that several of the electronic documents withheld are described as "'Preliminary hydrogeologic interpretations and a conceptual model of ground-water flow in the Pohatcong valley, New Jersey Highlands[.]'" (*Id*. at 15 (quoting L.Civ.R. 37.1 Letter, Ex. Q at 10)). Again, from this description, PPPI claims that "it appears that the document contains factual data related to ground-water flow in the Pohatcong Valley that should be produced, with redacted analyses that the government may believe is protected under the deliberative process privilege." (*Id*.)

PPPI claims that, "based on the United States' own descriptions[,]" these documents "contain measured values for various groundwater and surface water conditions[.]" (*Id*. at 14). PPPI claims that the documents are therefore relevant because the United States, in order to support its allegation that PPPI should be liable for the cleanup costs at the Site, "has asserted that the groundwater in the Pohatcong Valley behaves in a specific way[.]" (*Id*. at 14). As

13

such, PPPI maintains that the withheld documents are relevant because facts surrounding the ground and surface water flow characteristics in the Pohtacong Valley are fundamental to the United States' claims against PPPI.  Consequently, PPPI argues that the United States should produce the severable factual material from these documents.

PPPI further argues that all of the documents listed in the Kropp Declaration (*see* L.Civ.R. 37.1 Letter, Ex. Q, Ex. 2 at 10-13) should be produced because the United States has failed to establish that they are pre-decisional, a requirement of the deliberative process privilege.  In this regard, PPPI contends that the United States has not tied any of the documents listed in Exhibit 2 of the Kropp Declaration to a specific final decision.  PPPI argues that Kropp's vague statement that "'I have personally reviewed the documents listed on **Exhibit 2** and found that they pertain to the preparation and review of draft agency reports and the internal deliberations leading to the final report'" is "insufficient to invoke the deliberative process privilege."  (PPPI Opp. Br. at 16 (quoting Kropp Decl. ¶8 (Emphasis in original))).  As a result, because "none of the documents listed in Exhibit 2 are tied to a specific final decision," PPPI argues that the United States' assertion of the deliberative process privilege fails and the documents should be produced.  (*Id*. at 17).

With respect to the documents identified in the Enck Declaration, PPPI argues that the United States' assertion of the deliberative process privilege fails for several other reasons.  For example, PPPI takes issue with the fact that Enck only reviewed a representative sample of documents listed in the Declaration.  PPPI notes that the EPA's "Guidance for the Assertion of Deliberative Process Privilege" provides that "'[i]n cases involving an extraordinarily large amount of material, the delegate need only review a representative sample.  It is understood that these will be extreme cases.'"  (*Id*. at 17 (quoting Ex. C, §IV.4)).  PPPI argues that the Enck

Declaration only covers 171 documents, 156 of which are draft PRAPs.  PPPI contends that 171

documents do not reflect an extraordinary large amount of material and that this is particularly

true in light of the volume of documents produced in this case.  As a result, PPPI contends that it

was inappropriate for the EPA to review only a representative sample of the documents

purportedly protected by the deliberative process privilege.

In addition, PPPI raises objections to the different categories of documents identified in

the Enck Declaration.  For example, with respect to the 156 draft PRAPs (or Category A), PPPI

objects to the fact that the United States has withheld the entire draft PRAPS when the EPA only

specifically asserted the deliberative process privilege over the "'annotations that reflect EPA

staff opinions, evaluations and recommendations as to site conditions and clean-up options"

contained in the drafts.  (*Id*. at 18 (quoting Enck Declaration at ¶6(A))).  PPPI argues that at a

minimum, the United States should redact said annotations and produce the redacted draft

PRAPs.  PPPI argues that this would be consistent with the bounds of the deliberative process

privilege as the draft PRAPS contain factual information and the "'deliberative process privilege

does not protect factual information, even if such information is contained in an otherwise

protectable document, as long as such information is severable.'"  (*Id*. at 19 (quoting *Redland

Soccer Club*, 55 F.3d at 853)).

Similarly, PPPI objects to the United States assertion of privilege with respect to the

documents contained in Category B of the Enck Declaration, *i.e.*, the 10 separate documents that

comprise 3 email chains between EPA Region II subordinates and EPA Headquarters' Remedy

Coordinator, EPA Headquarters' Office of Superfund Remediation & Technology Innovation

reviewers and ERRD officers.  In this regard, PPPI again objects to the EPA's review of only a

representative sample of documents, especially since there are so few documents contained in

Category B.  Further, PPPI argues that the government has not produced all of the information required by Rule 26(b)(5) with respect to these documents and that "[t]hat lack of necessary information renders any assertion of the deliberative process privilege as to these documents insufficient."  (*Id*.)  Consequently, PPPI argues that the United States should produce all of these documents.

PPPI also takes issue with the United States' refusal to produce two memoranda that allegedly contain recommendations regarding the EPA's selection of a groundwater remedy at the Site.  With respect to one of these documents, PO-EPA373770, PPPI argues that, at a minimum, the United States should be compelled to produce the factual information contained therein with the deliberative content redacted.  In this regard, PPPI notes that Enck confirms that factual information is contained in this document, stating that this "'document consists of a chart containing potential direct contact and groundwater values that were considered by EPA during the remedy selection decision-making process.'"  (*Id*. at 20 (quoting Enck Declaration ¶6(C)).  While PPPI acknowledges that the Enck Declaration goes on to state that "'[t]his chart contains the personal recommendations and opinions of the technical reviewer concerning the formulation of official agency policy regarding the selection of the appropriate cleanup number[,]'" PPPI argues that those personal recommendations and opinions can be redacted and that, at the very least, the United States should produce the factual information, namely the chart with the direct contact and groundwater values.  (*Id*. (quoting Enck Declaration  ¶6(C)).

As to the second memoranda, PO-EPA215396, PPPI claims that the United States has not established that it falls within the deliberative process privilege because the Enck Delcaration does not specify any final decision to which it is connected and, as such, the United States has not established that it is pre-decisional.  As a result, while the memoranda contains the notes of

an EPA Remedial Project Manager concerning a meeting between the EPA and the New Jersey Department of Environmental Protection (the "NJDEP") concerning the Site, because the Enck Declaration does not identify any specific final decision to which the notes pertain or establish that the notes temporarily preceded such a decision, PPPI claims that the United States reliance on the deliberative process privilege fails.  Consequently, PPPI argues that this document should be produced.

Further, with respect to the draft Feasibility Study, PO-EPA 217193-5, PPPI argues that the factual information contained therein is severable.  As such, PPPI claims that the United States should excise the opinions and evaluations of the EPA Remedial Project Manager and produce the remaining factual content.

Finally, PPPI argues that even if the United States had procedurally established the applicability of the deliberative process privilege, the Court should nevertheless require the United States to produce all of the documents listed in the Enck and Kropp Declarations because under the requisite balancing test, the factors, when weighed, favor production.  PPPI argues that this is true because:

> (1) the documents the United States seeks to protect appear to address the central factual issues in this case dealing with groundwater and source characterization that are the basis of the United States costs claims, (2) PPPI is entitled to the full discovery to defend itself against the government's lawsuit and allegations, (3) the public is entitled to know the transparent process by which the government assesses CERCLA liability and how it was assessed for the Pohatcong Valley, and (4) the United States is a plaintiff in this lawsuit seeking a money judgment from PPPI.

(*Id*. at 21-22 (Footnote omitted)).

With respect to the relevance of the withheld documents, PPPI focuses on the fact that the withheld EPA and USGS documents contain data regarding the groundwater flow regime and

characteristics at the Site.  PPPI argues that the United States' costs claims against PPPI are based in large part on the United States' claims that the groundwater flows in a particular direction at the Site.  PPPI argues that it needs access to the underlying data contained in the withheld documents in order to properly assess and challenge the United States' claims. Additionally, PPPI argues that data concerning the groundwater at the Site also forms the basis of the United Sates' remedial selection.  Consequently, PPPI argues that the withheld groundwater data is also relevant to its defense that the costs incurred by the United States are inconsistent with the National Contingency Plan.

PPPI also argues that the withheld USGS documents are relevant because the EPA and the USGS have not consistently agreed on the nature of the groundwater regime at the Site, or more specifically on OU2.  In fact, PPPI notes that the USGS created a site specific groundwater model that the EPA rejected.  PPPI also notes that it disputes the United States' analysis of the groundwater data as well as the United States' conclusions regarding groundwater flow at the Site that form the basis for the EPA's remedial selection of OU2.  PPPI argues that the withheld documents contain information and data related to the USGS's rejected model, which are relevant to its claims and defenses here.

Further, PPPI claims that solely the production of the EPA's public views in this case in insufficient.  In this regard, PPPI argues that it should not have to accept on faith that what the EPA published about its views on the groundwater issues at the Site is fact.  Instead, PPPI contends that it should be given access to the underlying data relied upon by the EPA so that it can assess the EPA's characterization of groundwater flow at the Site.

Finally, PPPI highlights the fact that the United States is the plaintiff in this matter and is seeking affirmative relief.  Indeed, PPPI notes that the United States is looking to recoup

approximately $24 million.  PPPI argues that when it comes to assertions of the deliberative process privilege, "'courts have severely restricted the use of the privilege by government agencies that are seeking affirmative judicial relief.'"  (*Id.* at 26 (quoting *Ernstoff*, 183 F.R.D. at 153)).  PPPI argues that this is particularly true where, as here, the United States frequently is the plaintiff in these types of cases and where the information at issue is case-specific.  Moreover, PPPI contends that the United States' claim that its role as a plaintiff is irrelevant to the Court's determination is mistaken because the United States relies on Second Circuit law that is contrary to Third Circuit law to support its position.  As a result, PPPI argues that the United States should produce the documents listed in the Enck and Kropp Declarations.

### III.  Analysis

#### A.  Local Civil Rule 37.1

According to L.Civ.R. 37.1(a)(1), "[c]ounsel shall confer to resolve any discovery dispute.  Any such dispute not resolved shall be presented by telephone conference call or letter to the Magistrate Judge.  This presentation shall precede any formal motion."  Here, PPPI takes issue with the fact that the United States filed the instant motion for a protective order without explicit permission from the Court to do so.  While the Court agrees with PPPI that the better practice is to seek and obtain the Court's permission to file a formal discovery motion before doing so, the Court also recognizes that, in light of the fact that the United States wrote to the Court stating that it intended to file a formal motion for a protective order, the United States may have assumed that it had tacitly obtained the Court's permission to do same when the Court had not overtly rejected the motion prior to it having been filed.  Under these circumstances, the Court shall consider the merits of the United States' motion.  In the future, however, the parties

are advised that no formally filed discovery motion will be considered unless the party filing

same has explicitly obtained prior Court approval to do so.

### B.  The Deliberative Process Privilege

The Federal Rules of Civil Procedure govern civil matters filed in federal court.

FED.R.CIV.P. ("Rule") 1.  Rule 26(b)(1) governs the scope of permissible discovery in civil

matters filed in federal court.  According to Rule 26(b)(1), "the scope of discovery is as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

claim or defense. . . . Relevant information need not be admissible at the trial if the discovery

appears reasonably calculated to lead to the discovery of admissible evidence."  Further,

"[w]hen a party withholds information otherwise discoverable by claiming that the information is

privileged . . ., the party must . . . describe the nature of the documents, communications, or

tangible things not produced or disclosed – and do so in a manner that, without revealing

information itself privileged or protected, will enable other parties to assess the claim."  Rule

26(b)(5)A)(ii).  Parties generally accomplish same by producing privilege logs that identify for

each document withheld:  the date of the document, the name of its author, the names of all of its

recipients, the subject of the document and the privilege(s) asserted.  *See Wei v. Bodner*, 127

F.R.D. 91, 96 (D.N.J. 1989).

When a claim is based on federal law, like this CERCLA action, then issues concerning

privilege are governed by federal common law.  *See* FED.R.EVID. 501.  The federal common law

recognizes the deliberative process privilege.  The deliberative process privilege "'protects

agency documents that are both predecisional and deliberative.'"  *Abdelfattah v. U.S. Dept. of*

*Homeland Sec.*, 488 F.3d 178, 183 (3d Cir. 2007) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d

141, 151 (D.C.Cir. 2006)).  "[T]he ultimate purpose of this long-recognized privilege is to

prevent injury to the quality of agency decisions." *National Labor Relations Board v. Sears,*

*Roebuck & Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 44 Led.2d 29 (1975).  The privilege

"recognizes 'that were agencies forced to operate in a fishbowl, the frank exchange of ideas and

opinion would cease and the quality of administrative decisions would consequently suffer.'"

*Redland Soccer Club, Inc. v. Department of the Army*, 55 F.3d 827, 854 (3d Cir. 1995) (quoting

*First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C.Cir. 1994) (quotations and internal

ellipses omitted)).

      In order to assert the deliberative process privilege, the following three procedural

requirements must be satisfied:  (1) the head of the department which has control over the matter

must make a formal claim of privilege after actually considering the matter; (2) the responsible

agency official must provide precise and certain reasons for asserting the privilege over the

government information or documents at issue; and (3) the government information or

documents sought to be shielded from disclosure must be identified and described.  *U.S. v.*

*Ernstoff*, 183 F.R.D. 148, 152 (D.N.J. 1998).

      After these three procedural requirements are met, the Court must determine whether the

government has substantively established a *prima facie* case that the deliberative process

privilege applies.  As noted above, to do so, the government must show that the documents in

question are pre-decisional and deliberative.  *Abdelfattah*, 488 F.3d 178, 183 (3d Cir. 2007).  In

order to be pre-decisional, a document must concern an anticipated agency decision and have

been generated prior to the actual decision being reached; it cannot involve a communication

concerning the decision made after the decision has already been adopted.  *See National Labor*

*Relations Board*, 421 U.S. at 151-52.  Further, to be deliberative, a document must reflect

"'advisory opinions, recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated.'" *Id.* at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)).

Because the privilege only extends to deliberative documents, it does not generally apply to "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context[.]" *Environmental Protection Agency v. Mink*, 410 U.S. 73, 88, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). However, "factual information that itself reveals the deliberative process and cannot be severed from the deliberative context is protected." *In re U.S.*, 321 Fed. Appx. 953, 959 (Fed. Cir. 2009) (citing *Mink*, 410 U.S. at 87-88). In determining whether material is deliberative, "[c]ourts 'focus less on the nature of the materials sought and more on the effect of the materials' release: the key question in [such] cases became whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Id.* (quoting *Dudman Commc'ns v. Department of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

When the government establishes that these threshold requirements have been met, then the deliberative process privilege is applicable. The Court's inquiry, however, does not end here because "[t]he privilege, once determined to be applicable, is not absolute." *Redland Soccer Club*, 55 F.3d at 854. Instead, after a government agency establishes that the deliberative process privilege applies, the Court performs a balancing test to weigh the parties' competing interests. "The party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest." *Id.* In balancing the parties' competing interests, the Court considers: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv)

22

the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id.* (quoting *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994)) (internal quotation marks omitted); *see Ernstoff*, 183 F.R.D. at 153.

### 1. The Sufficiency of the United States' Privilege Log

As an initial matter, PPPI takes issue with the sufficiency of the United States' assertion of privilege over several documents, arguing that the United States' privilege log is insufficient under Rule 26(b)(5)(A)(ii) because it does not enable PPPI to assess whether the disputed documents are entitled to the claimed deliberative process privilege. PPPI first takes issue with the United States' privilege log entries for the following 53 documents:

| | | | |
|---|---|---|---|
| PO-EPA297899 | PO-EPA305813 | PO-EPA307493 | PO-EPA308993 |
| PO-EPA297919 | PO-EPA305887 | PO-EPA308659 | PO-EPA309013 |
| PO-EPA304449 | PO-EPA305907 | PO-EPA308681 | PO-EPA309033 |
| PO-EPA305578 | PO-EPA305927 | PO-EPA308703 | PO-EPA309053 |
| PO-EPA305600 | PO-EPA305947 | PO-EPA308725 | PO-EPA309073 |
| PO-EPA305622 | PO-EPA305967 | PO-EPA308747 | PO-EPA309093 |
| PO-EPA305644 | PO-EPA305987 | PO-EPA308769 | PO-EPA309113 |
| PO-EPA305666 | PO-EPA306007 | PO-EPA308791 | PO-EPA309133 |
| PO-EPA305688 | PO-EPA306027 | PO-EPA308812 | PO-EPA309152 |
| PO-EPA305710 | PO-EPA306047 | PO-EPA308832 | PO-EPA309171 |
| PO-EPA305731 | PO-EPA306066 | PO-EPA308857 | PO-EPA309190 |
| PO-EPA305751 | PO-EPA306085 | PO-EPA308878 | |
| PO-EPA305771 | PO-EPA306104 | PO-EPA308899 | |
| PO-EPA305792 | PO-EPA307238 | PO-EPA308973 | |

The Court notes that with one exception, which the Court addresses below, all of these documents are draft PRAPs. In addition, the United States' log entries for these 52 draft PRAPs are identical. While the log entries indicate that the deliberative process privilege is being asserted over these documents and while they contain the following, identical "Privilege Description" for each document, none of the log entries identify the date of the draft PRAP, who authored it or its recipients:

> Pre-decisional draft proposed plan for OU2 circulated for review
> and comment on final agency decision.  Draft Proposed Plans are
> pre-decisional and reflect the internal deliberations of EPA staff
> that led to the development of the final, released proposed Plan.
> Drafts of the Proposed Plan reflect staff opinions, evaluations and
> recommendations as to site conditions and clean-up options.
> Disclosure of draft Proposed plans would chill the free and open
> discussion among EPA staff involved in formulating
> recommendations to the relevant Agency officials during the
> CERCLA decision making process.

(United States Addendum to Second Supplemental Privilege Log 8/2011).  As with the log

entries related to the draft PRAPs, the log entry associated with the remaining document PO-

EPA307238, also fails to identify the date of the document, who authored it or its recipients.  The

United States' privilege log does, however, assert the deliberative process privilege over this

document, providing the following "Privilege Description:"

> Draft ground water flow model report.  This draft is pre-decisional
> and reflects the internal deliberations of USGS and EPA staff that
> led to the development of scientific conclusions that are formally
> endorsed by the agency in the final report.  Disclosures of these
> drafts would chill the free and open discussion among agency staff
> of the data, scientific analyses, and policy decisions formulated for
> inclusion in such a report.

(*Id*.)

Curiously, despite the fact that PPPI raised its concerns over the United States' privilege

log in its L.Civ.R. 37.1 Letter, the United States does not address same in its motion.  On their

face, the United States' privilege log entries for the 53 identified documents appear to be

insufficient.  Indeed, the United States, while asserting that the documents are pre-decisional,

fails to provide any date information for the documents.  Given the United States' choice not to

address the sufficiency of its privilege log in its motion, the Court is without the benefit of any

argument as to why the United States' failure to identify the dates of the 53 documents, who

authored them and their recipients is not problematic.  In light of the foregoing, the Court could

require the United States to produce these documents now.  Nevertheless, because the

descriptions for these documents suggest a strong likelihood that they contain deliberative

information and are, in fact, pre-decisional, the Court shall exercise its discretion to afford the

United States an opportunity to fix the identified inadequacies.  The United States is directed to

supplement its privilege log with respect to these 53 documents no later than **April 5, 2013**.

 PPPI also objects to the sufficiency of the United States' privilege log as it pertains to the

following 24 documents:

| PO-EPA321737-756 | PO-EPA339310-311 | PO-EPA414539-558 | PO-EPA190754 |
|---|---|---|---|
| PO-EPA336173-192 | PO-EPA339676-695 | PO-EPA187350-1 | PO-EPA396909[4] |
| PO-EPA336389-408 | PO-EPA340901-920 | PO-EPA359064-6 | PO-EPA373770 |
| PO-EPA336520-539 | PO-EPA359606-625 | PO-EPA338708-9 | PO-EPA396740-2 |
| PO-EPA337601-619 | PO-EPA389932-951 | PO-EPA187459-60 | PO-EPA215396 |
| PO-EPA338962-976 | PO-EPA404744-765 | PO-EPA185954 | PO-EPA286869[5] |

 From the Court's review of PPPI's L.Civ.R. 37.1 Letter as well as the motion papers, it

does not appear that these documents have been included by the United States on a privilege

log;[6] though all are described in varying levels of details in the Enck Declaration.   Of the 24

documents, the Enck Declaration identifies the first 13 as draft PRAPs.[7]  No additional

information specific to these documents is included in the Enck Declaration.  The Enck

Declaration provides significantly more detail concerning the remaining 11 documents.  For

example, the following description is provided for the next 7 documents (PO-EPA187350-1, PO-

---

[4] This document is also Bates stamped PO-EPA185954.
[5] This document is a duplicate of PO-EPA215396 with additional Bates number.
[6] While it does not appear that any of these documents have been logged, the Court notes that
PO-EPA396740-2 and PO-EPA217193-5 are duplicates and PPPI does not raise any issues with
respect to the latter document.  The Court assumes that this is because PO-EPA217193-5 has
been properly logged.  If this is indeed the case, then the fact that PO-EPA396740-2 was not
properly logged is not substantially meaningful.
[7] Using the above-delineated table, the first 13 documents refers to the first two columns of
documents as well as the first document listed in the third column.

EPA359064-6, PO-EPA338708-9, PO-EPA187459-60, PO-EPA185954, PO-EPA190754 and

PO-EPA396909):[8]

        i.     <u>PO-EPA185874-6, PO-EPA187350-1, PO-EPA359064-6, PO-EPA389163</u> (also Bates stamped PO-EPA187350), <u>PO-EPA396650</u> (also Bates stamped PO-EPA187350).  These documents correlate to an email chain containing a total of four discrete emails generated from February 23, 2010 through March 9, 2010, and between EPA-Headquarters Remedy Coordinator Richard Kapuscinski, EPA Southern Jersey Remedial Section Chief Kim O'Connell, and EPA Remedial Project Manager Stephen Cipot.  Portions of this email chain wherein Mr. Kapuscinski provides comments and recommendations on a draft of the PRAP for the Pohatcong Valley Groundwater Contamination Superfund Site –Operable Unit 2 reflecting internal pre-decisional deliberations have been redacted.

        ii.    <u>PO-EPA338708-9</u>—This document is an email chain reflecting three separate emails generated between May 2, 2006 through May 23, 2006, among Stephen Cipot, Remedial Project Manager, Sherri Clark and Waleska Nieves-Munoz, EPA Headquarters reviewers from the Office of Superfund Remediation & Technology Innovation ("OSRTI"), and Robert Alvey, Geologist, with a cc: to EPA Southerern Jersey Remedial Section Chief Kim O'Connell, and EPA Headquarters employee Rafael Gonzalez.  In these emails, Ms. Clark, Ms. Munoz, and Mr. Cipot provide comments and recommendations on a revised draft ROD for the Pohatcong Valley Groundwater Contamination Superfund Site –Operable Unit 1 that reflect their internal pre-decisional deliberations and opinions that were made in the course of an on-going remedy selection decision making process.

        iii.   <u>PO-EPA187459-60, PO-EPA185954, PO-EPA190754, PO-EPA185954</u> (also Bates stamped PO-EPA396909).  These documents consist of an email chain reflecting four

---

[8] As described, these documents make up Category B.

> separate emails generated on June 28, 2006 between Bill
> McCabe, Deputy Director for ERRD, and Carole Petersen,
> Chief of New Jersey Remedial Section, cc'ing George
> Pavlou, the Director of ERRD, John Frisco, Remedy
> Selection/Design and Construction Manager, Kim
> O'Connell, Chief of the Southern Jersey Remedial Section,
> and Remedial Project Manager Stephen Cipot.  In these
> emails, Mr. McCabe and Ms. Petersen engage in a
> discussion related to EPA's decision-making process as
> reflected in the draft Responsiveness Summary, an
> attachment to the draft ROD for the Pohatcong Valley
> Groundwater Contamination Site.

(Enck Decl. ¶ 6(B)).

The last 4 are also described in more detail.  For example, the Enck Declaration provides

the following description for PO-EPA373770 (the "Direct Contact Groundwater Values Chart"):

> This undated document consists of a chart containing potential
> direct contact groundwater values that were considered by EPA
> during the remedy selection decision-making process.  This chart
> contains the personal recommendations and opinions of the
> technical reviewer concerning the formulation of official agency
> policy regarding the selection of the appropriate cleanup number.
> Disclosure of this document would chill the open and candid
> discussion of ideas by those who participate in the remedy
> selection decision-making process, ultimately hindering the
> agency's ability to carry out is remedial mission.

(*Id.* ¶ 6(C)).  Further, with respect to PO-EPA396740-2 (the "draft Feasibility Study"), which is a

duplicate copy of PO-EPA217193-5, the Enck Declaration sets forth that these documents:

> [C]ontain text from a draft Feasibility Study report generated by
> EPA Remedial Project Manager Stephen Cipot and last modified
> on November 2, 2004.  This draft document contains Mr. Cipot's
> evaluation of site conditions and recommendation for clean up
> remedies to be included in Operable Unit 1 of the Pohatcong
> Valley Superfund Site.  The document contains the opinions of Mr.
> Cipot made in the course of an ongoing internal decision-making
> process, ultimately leading to the development of a final decision

> endorsed by the Agency in its ROD for Operable Unit 1.
> Specifically, this document contains the candid evaluation of site
> conditions and proposes a recommended clean up action for
> Operable Unit 1.  Disclosure of this document would chill the open
> and candid discussion of technical issues within EPA and hinder
> EPA's ability to have the open exchange of ideas and opinions.

(*Id*. ¶ 6(D)).  Finally, as to PO-EPA215396 and PO-EPA286869 (the "EPA/NJDEP Meeting

Memo"), which are duplicate copies of each other, the Enck Declaration specifies that these

documents represent:

> [A] memorandum authored by EPA's Remedial Project Manager,
> Stephen Cipot, which contains the author's notes taken during a
> meeting between EPA and the State of New Jersey Department of
> Environmental Protection ("NJDEP") regarding the Pohatcong
> Valley Groundwater Contamination Site.  The memorandum
> presents the concerns, comments, and positions raised by the
> NJDEP on EPA's remedial approach for the Pohatcong Valley
> Groundwater Contamination Site.  This communication with the
> NJDEP was made as part of EPA's obligations to ensure
> meaningful and substantial State involvement in EPA's
> implementation of CERCLA.  It reflects consultation on matters
> between EPA and the State of New Jersey as a support agency
> under CERCLA, pursuant to 40 C.F.R. 300.515(e), state
> involvement in selection of remedy.

(*Id*. ¶ 6(E)).

The Court finds the United States' apparent failure to log the aforementioned 24

documents troubling as providing a privilege log for all documents withheld on the basis of

privilege is a basic discovery requirement.  The Court is also troubled by the United States'

failure to address this issue in its moving papers despite having been alerted to same through

PPPI's L.Civ.R. 37.1 Letter.  Furthermore, while the Court finds that the Enck Declaration

provides sufficient information to permit PPPI to assess the United States' claim of privilege

with respect to some of the documents identified therein, it fails with respect to others.

For example, the Enck Declaration does not meet the requirements set forth in Rule 26(b)(5)(A)(ii) for the 13 draft PRAPs.  While it is clear from the Enck Declaration that these PRAPs, like the 52 identified above, relate to OU2 and "reflect internal deliberations of EPA staff that led to the development of the final PRAP, released for public comment[,]" including "annotations that reflect EPA staff opinions, evaluations and recommendations as to site conditions and clean-up options[,]" the Enck Declaration does not specify the dates of the draft PRAPs, which is significant to the Court's determination of whether the draft PRAPs are pre-decisional.[9]  (Enck Decl. ¶ 6(A)).  Nevertheless, as with the 52 draft PRAPS identified above, in light of the fact that the Enck Declaration's description of these 13 draft PRAPS indicate that it is likely that they contain deliberative information and are, in fact, pre-decisional, the Court shall exercise its discretion to afford the United States an opportunity to supplement its privilege log and add these documents thereto.  The United States is directed to supplement its privilege log with respect to these 13 draft PRAPs no later than **April 5, 2013**.

The Enck Declaration also fails to meet the requirements of Rule 26(b)(5)(A)(ii) with respect to the Direct Contact Groundwater Values Chart (PO-EPA373770),  the draft Feasibility Study (PO-EPA396740-2) and the EPA/NJDEP Meeting Memo (PO-EPA215396 and PO-EPA286869).  For example, with respect to the Direct Contact Groundwater Values Chart, the Enck Declaration does not identify the author of the chart and/or the personal recommendations

---

[9] The Court notes that the Enck Declaration actually provides more information for these 13 draft PRAPs than the United States' privilege log does for the 52 draft PRAPs.  In this regard, the Enck Declaration specifies that the draft PRAPS were "circulated among EPA staff in different sections of the Emergency and Remedial Response Division ("ERRD"), including risk assessors, and to EPA Headquarters staff, and attorneys within ORC, to allow for their comments on and evaluation of the plan."  (*Id*.)

and opinions contained therein or to whom the chart was circulated.[10]  Similarly, with respect to

the draft Feasibility Study, the Enck Declaration does not identify to whom it was circulated.

Likewise, with respect to the EPA/NJDEP Meeting Memo, the Enck Declaration fails to identify

the date this memorandum was written or to whom it was circulated.  Despite these failures, the

Court is inclined to permit the United States to supplement its privilege log as to these

documents.  Consequently, unless otherwise specified herein, the United States is directed to do

so no later than **April 5, 2013**.

Unlike with the other documents, the Court finds that the Enck Declaration does provide

the information required by Rule 26(b)(5)(A)(ii) with respect to the remaining 7 documents: PO-

EPA187350-1, PO-EPA359064-6, PO-EPA338708-9, PO-EPA187459-60, PO-EPA185954, PO-

EPA190754 and PO-EPA396909.  Indeed, for each of these documents, the Enck Declaration

clearly delineates the privilege claimed, the author and recipients of the documents, the dates of

the documents as well as the general subject matter of the documents.

### 2.  The Use of Representative Samples

In addition to arguing that certain documents should be produced because of the

aforementioned inadequacies with the United States' privilege log, PPPI also argues that the

United States' assertion of the deliberative process privilege over certain documents identified in

the Enck Declaration fails because Enck only reviewed a representative sample of certain

documents listed therein.  In this regard, PPPI objects to the EPA's decision to review only a

sample of the Category A and Category B documents, *i.e.*, the 156 draft PRAPS as well as the 10

documents that comprise 3 email chains between EPA Region II subordinates and EPA

Headquarters' Remedy Coordinator, EPA Headquarters' Office of Superfund Remediation &

---

[10] The Enck Declaration also does not identify the date of the chart; though it does specify that
the chart is undated.

Technology Innovation reviewers and ERRD officers.  PPPI objects to the EPA's decision to review representative samples of these documents because, according to the EPA's own "Guidance for the Assertion of Deliberative Process Privilege," the agency head is only to resort to reviewing representative samples "[i]n cases involving an extraordinarily large amount of material[.]"  (PPPI Opp., Ex. C, §IV.4).  Here, PPPI notes that Enck only had to review 171 documents, which PPPI contends does not reflect an extraordinarily large amount of material.

The Court, however, finds Enck's decision to review only a representative sample of the 156 draft PRAPs to be acceptable.  Further, while the Court may have objected to a decision to review only a representative sample of the Category B documents, it appears to the Court that Enck, in fact, reviewed all 10 documents that comprise Category B.  While Enck states that she reviewed "six (6) documents, as well as five (5) additional documents that do not fall within categories A and/or B[,]" suggesting that she only reviewed a combined 6 documents from categories A and B, and while 3 of the 6 documents reviewed are draft PRAPs from Category A, suggesting that Enck only reviewed 3 Category B documents, it appears that Enck, in fact, reviewed more than 3 Category B documents.  (Enck Decl. ¶ 5).

In this regard the description of Category B documents reviewed, which is quoted verbatim herein on pages 26 to 27, indicates that Enck reviewed all of the 10 documents that comprise Category B:  PO-EPA185874-6, PO-EPA187350-1, PO-EPA359064-6, PO-EPA389163 (also Bates stamped PO-EPA187350), PO-EPA396650 (also Bates stamped PO-EPA187350), PO-EPA338708-9, PO-EPA187459-60, PO-EPA185954, PO-EPA190754, PO-EPA396909 (also Bates stamped PO-EPA185954).  Consequently, the Court finds no reason to compel the production of any documents based on the EPA's review of only a representative

31

sample of certain documents over which the United States is asserting the deliberative process privilege.

### 3.  Severable Factual Material

PPPI also argues that a number of the documents over which the United States has claimed the deliberative process privilege contain factual material.  PPPI further argues that this factual material is severable and that the United States should produce same.  Specifically, PPPI contends that the following documents/groups of documents contain severable factual material: (1) the 4 hard-copy files and 40 electronic files listed in the Kropp Declaration; (2) the Direct Contact Groundwater Values Chart (PO-EPA373770); (3) the draft Feasibility Study (PO-EPA217193-5 and PO-EPA396742-0); and (4) the 156 draft PRAPs.

As noted above, the deliberative process privilege does not apply to "memoranda consisting only of compiled factual material" or even to "purely factual material contained in deliberative memoranda" if the factual material is "severable from its context[.]"  *Mink*, 410 U.S. at 88.  In determining whether factual material is severable, the Court focuses on "'whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'"  *In re U.S.*, 321 Fed. Appx. At 959 (quoting *Dudman Commc'ns*, 815 F.2d at 1568).

Here, the Court finds that all of the documents identified by PPPI contain some factual material.  In this regard, it is clear from the descriptions set forth in the Kropp Declaration that the identified USGS documents include factual information.  For example, two of the hard copy files listed in the Kropp Declaration are described as "containing draft copies of text, figures, and tables for the . . . report" (Kropp Decl., Ex. 2 at 10).  The data contained in the figures and tables

is clearly factual.  Similarly, it is clear from the descriptions of the 40 disputed electronic

documents outlined in the Kropp Declaration that these documents, many of which involve

conceptual models of ground-water flow and simulations of groundwater flow, include factual

material.  Likewise the description of the Direct Contact Groundwater Values Chart provided in

the Enck Declaration, which specifies that the document, in part, "consists of a chart containing

potential direct contact and groundwater values that were considered by EPA during the remedy

selection decision-making process[,]" establishes that factual information is contained therein.

(Enck Decl. ¶ 6(C)).  The Enck Declaration also suggests that factual data related to the

groundwater and soil at the Site is contained in the draft PRAPs.  (*Id*. ¶ 6(A)).

     The more difficult question faced by the Court is whether the factual information

contained in the aforementioned documents is severable.  There is nothing in the Enck or Kropp

Declarations that specifically addresses the severability of the factual information contained in

the aforementioned documents.  Neither declaration addresses why the factual information

cannot be severed from the deliberative material or how segregating out the factual information

would reveal the EPA or USGS's deliberations.  Instead, this issue is only addressed in the

United States' brief.  In that brief, the United States devotes the following three sentences to

explaining why the disputed documents do not contain severable factual material:

> [T]he groundwater and soil datum that underlie the Agency's
> deliberations of an appropriate groundwater and soil remedy at the
> Site is so thoroughly integrated in the draft PRAPs and related
> memoranda that any attempt to segregate out factual information
> would reveal EPA's deliberations.  See *Horowitz v. Peace Corps*,
> 428 F.3d 271, 277 (D.C. Cir. 2005); *Goodrich v. EPA*, 593 F.Supp.
> 2d 184, 189 (D.D.C. 2009) (protecting draft model because
> "evolving iterations" of model may not represent agency's
> "ultimate opinion," therefore "even if the data plugged into the
> model is itself purely factual, the selection and calibration of data

is part of the deliberative process"); *Brannum v. Dominguez*, 377
F.Supp. 2d 75, 83 (D.D.C. 2005).

Likewise, the USGS draft manuscripts at issue contain both
integrated factual material and factual material that itself reflects
the Agency's deliberative process.  For example, when a USGS
peer review selects specific groundwater values or aquifer tests to
discuss and interpret – out of a larger group of facts – that very act
is deliberative in nature.  See *Montrose Chem. Corp. v. Train*, 491
F.2d 63 (D.C. Cir. 1974) (holding that the very act of separating
significant facts from insignificant facts constitutes an exercise of
judgment by agency personnel); See also *Columbia Snake River
Irrigators Ass'n*, No. 07-C1388, 2008 WL 750574, at *4 (W.D.
Wash. 2008) (protecting agency documents that included factual
information in part because "the process of prioritizing facts and
conclusions and weighing their importance and relevance is often
an exercise of judgment that can affect Agency policy") (citations
omitted).

(United States Br. at 13) (footnote omitted).

While the United States' showing is not overwhelming, when its arguments are

considered in conjunction with relevant case law, the Court is persuaded that much of the factual

material in dispute is not severable.  In reaching this conclusion, the Court notes that there is a

dearth of case law from the Third Circuit and the District of New Jersey discussing the

circumstances under which factual material is considered severable.  The Court, however, is

guided by the United States Court of Appeals for the District of Columbia's decision in

*Montrose*, 491 F.2d 63, as well as the District of Columbia's decision in *Goodrich*, 593 F.Supp.

2d 184.

In *Montrose*, the United States Court of Appeals for the District of Columbia clarified

that there were circumstances under which an agency's selection of facts or summary of factual

material may be protected by the deliberative process privilege.  *See* 491 F.2d at 71.  Indeed, the

*Montrose* court determined that when a summary of publicly available factual material is

prepared to be used and is used as an aid in agency decision-making, then the deliberative

process privilege applies to protect the factual summary.  *Id.*  Similarly, the District of Columbia

in *Goodrich* found that draft groundwater flow models were covered by the deliberative process

privilege.  593 F.Supp. 2d at 189.  In reaching this conclusion, the Court noted that "drafts" in

general were protected by the deliberative process privilege and determined that "[t]he draft

groundwater flow model reflects EPA's deliberative process because 'evolving iterations of the

Model's inputs and calibration reflect the opinions of the staff currently developing the Model,

which may not represent EPA's ultimate opinions relating to these matters.'"  *Id.*  The Court,

relying on *Montrose*, further determined that "even if the data plugged into the model is itself

purely factual, the selection and calibration of data is part of the deliberative process[.]"  *Id.*  As

a result, the Court found that the EPA had properly withheld the groundwater flow model even

though it also planned on releasing a complete/final model at some point in the future.  *Id*. at

189-190.

        With these principles in mind, the Court turns to the documents at issue here.  The Court

begins with the USGS's four hard copy files and 40 electronic files.  The Court agrees with the

United States that "when a USGS peer review selects specific groundwater values or aquifer tests

to discuss and interpret – out of a larger group of facts – that very act is deliberative in nature."

(United States Br. at 13).  As a result, in such circumstances, the selected factual information,

*i.e.*, the specific groundwater values or aquifer tests discussed, while obviously factual in nature

is not severable.  Instead, requiring the United States to produce the factual material contained

therein would reflect the USGS's deliberative process.  *See Montrose*, 491 F.2d at 71.  For

similar reasons, the Court finds that the data relied upon by the USGS in its preliminary/draft

hydrogeologic interpretations, conceptual models of groundwater flow and simulations of

groundwater flow, while factual, is non-severable because "the selection and calibration of data is part of the deliberative process."  *Goodrich*, 593 F.Supp. 2d at 189.  As such the Court finds that the USGS's four had copy files and 40 electronic files do not contain severable factual information and the United States has properly withheld same.

In reaching this conclusion, the Court relies on the United States' representation that "PPPI already has the groundwater and soil sampling data underlying the agencies [sic] deliberations in the . . . USGS published reports in its possession, as they were produced to PPPI as part of the United States' enormous production of electronic and hardcopy documents to date."  (United States Br. at 14).  As the Court in *Montrose* recognized, "a different result might be reached" if the factual material from which the selected data derives was not available.  491 F.2d at 71.  Here, however, the United States has represented that PPPI has access to all of the factual material from which the selected data used in the peer reviews, draft manuscripts and draft models originates.  Consequently, the Court finds that the factual information contained in the identified USGS documents is non-severable.  The Court shall, however, require the United States to provide a certification from someone with knowledge, stating under oath that PPPI has been provided with all of the factual material from which the selected data used in the four hard copy files and 40 electronic files derives.  This certification shall be submitted no later than **April 5, 2013**.

As with the USGS documents, the Court finds that the factual information contained in the draft PRAPS is non-severable.  While PPPI argues that the United States only contends that the annotations contained within the draft PRAPs are deliberative, not the draft PRAPS in their entirety, the Court disagrees.  The United States clearly claims that the draft PRAPS are deliberative:  "[t]hese drafts . . . reflect the internal deliberations of EPA staff that led to the

development of the final PRAP, released for public comment." (Enck Decl. ¶ 6(A)). Further, while the annotations to the draft PRAPs, which "reflect EPA staff opinions, evaluations and recommendations as to site conditions and clean-up options" are clearly deliberative, the Court additionally finds that the drafts themselves, regardless of whether the annotations are removed, are deliberative. Specifically the Court finds that how the draft PRAPS evolved overtime reflects the EPA's deliberative process. *See Goodrich*, 593 F.Supp. 2d at 189. The Court further finds that the factual groundwater and soil data contained in the draft PRAPS is sufficiently integrated into the developing iterations of those documents such that any attempt to segregate same would nevertheless result in the exposure of the EPA's deliberations. *See Id.* As a result, the Court finds that the draft PRAPs do not contain any severable factual information.

Again, as with the USGS documents, in reaching this conclusion the Court is mindful of the United States' representation that "PPPI already has the groundwater and soil sampling data underlying the agencies [sic] deliberations in the draft PRAPs . . . in its possession[.]" (United States Br. at 13-14). However, as previously stated, the Court shall require the United States to provide a certification from someone with knowledge, stating under oath that PPPI has been provided with all of the factual material from which the data relied upon in the draft PRAPs springs. This certification shall be submitted no later than **April 5, 2013**.

Like the USGS documents and draft PRAPS, the Court finds that the draft Feasibility Study (PO-EPA217193-5 and PO-EPA396742-0) encompasses factual information that is not severable from the deliberative material. According to the Enck Declaration, the draft Feasibility Study "contains Mr. Cipot's evaluation of site conditions and recommendation for clean up remedies to be included in Operable Unit 1 of the Pohatcong Valley Superfund Site." (Enck Decl. ¶ 6(D)). Mr. Cipot's evaluation and recommendation are clearly deliberative. It is also

obvious that his evaluation and recommendation were based on factual information that certainly also appears in the draft Feasibility Study.  Nevertheless, from the description contained in the Enck Declaration, it appears that the factual information is intertwined with Mr. Cipot's evaluation and recommendation in this draft document.  As a result, the Court finds that the factual data is non-severable.

Unlike with the prior documents, the Court finds that the factual information contained in the Direct Contact Groundwater Values Chart (PO-EPA373770) is severable.  In this regard, the Court agrees with PPPI that the actual "chart containing potential direct contact and groundwater values that were considered by EPA during the remedy selection decision-making process" is factual.  (Enck Decl. ¶ 6(C)).  The United States does not appear to dispute this.

Moreover, the Court remains unconvinced that "any attempt to segregate out [the] factual information" contained in this document would "reveal EPA's deliberations."  (United States Br. at 13).  Unlike with the USGS documents, draft PRAPS or draft Feasibility Study, neither the description of the Direct Contact Groundwater Values Chart provided in the Enck Declaration nor the United States' arguments proffered in its brief establish that disclosure of the data contained in this document would reveal the EPA's deliberations.   Indeed, there is nothing in either the declaration or the brief that suggests that revealing the data contained in the chart portion of the Direct Contact Groundwater Values Chart would, in and of itself, reveal the EPA's deliberative process.  For example, the United States has not established that the factual data contained in the chart represents only a selected subset of potential direct contact and groundwater values considered by the EPA such that revelation of the data actually selected would likewise result in the disclosure of the EPA's deliberative process.  Nor has the United States shown or even argued how disclosing the factual data set forth in chart would in some way

expose how the Direct Contact Groundwater Values Chart evolved overtime thereby also revealing the EPA's deliberative process.

Further, contrary to the United States' conclusory argument set forth in its brief, it appears from the description provided in the Enck Declaration that the deliberative information can easily be separated from the factual information contained in this document.  In this regard, the United States can segregate the factual data contained in the chart from the "personal recommendations and opinions of the technical reviewer concerning the formulation of official agency policy regarding the selection of the appropriate cleanup number."  As a result, the United States is directed to produce the severable factual information contained in the Direct Contact Groundwater Values Chart no later than **April 5, 2013**.

### 4.    Failure to Establish that Documents are Pre-Decisional

In addition to attacking the sufficiency of the United States' privilege log and arguing that the log fails to provide enough information for PPPI to generally assess whether the deliberative process privilege applies to the withheld documents, PPPI also specifically argues that the United States' assertion of the deliberative process privilege over the following documents fails because the United States has not established that the documents are pre-decisional:  all of the USGS documents as well as the EPA/NJDEP Meeting Memo (PO-EPA215396 and PO-EPA286869).

With respect to the USGS documents, PPPI argues that the United States' assertion of the deliberative process privilege fails because there is nothing in the Kropp Declaration tying these documents to a specific final decision.  Instead, PPPI argues that Kropp only provides the following, unsatisfactory, vague assertion: "I have personally reviewed the documents listed on **Exhibit 2** and found that they pertain to the preparation and review of draft agency reports and

the internal deliberations leading to the final report."  (Kropp Decl. ¶ 8 (Emphasis in original)).

While the Court believes that Kropp could have better articulated the final agency decision to

which the USGS documents relate, the Court finds that when his statement is taken in

conjunction with the United States' other representations, it becomes clear that the final agency

decision to which the USGS documents relate is the final PRAP.  In this regard, the United

States has made clear that the "EPA requested that USGS conduct hydrogeological investigations

groundwater flow assessments of the Pohtacong Valley to assist EPA in evaluating the

groundwater contamination alternatives identified in Part A, above[,]" *i.e.*, the final PRAP.

(United States Br. at 5).  The Court finds that the United States' submissions are sufficient to

establish that the USGS documents are pre-decisional.

PPPI also claims that the United States has not established that the EPA/NJDEP Meeting

Memo is pre-decisional.  Again, in making this argument, PPPI relies on the fact that the Enck

Declaration does not specify any final decision to which this document is connected.

In total, the description of the EPA/NJDEP Meeting Memo reads:

> This document is a memorandum authored by EPA's Remedial
> Project Manager, Stephen Cipot, which contains the author's notes
> taken during a meeting between EPA and the State of New Jersey
> Department of Environmental Protection ("NJDEP") regarding the
> Pohatcong Valley Groundwater Contamination Site.  The
> memorandum presents the concerns, comments, and positions
> raised by the NJDEP on EPA's remedial approach for the
> Pohatcong Valley Groundwater Contamination Site.  This
> communication with the NJDEP was made as part of EPA's
> obligations to ensure meaningful and substantial State involvement
> in EPA's implementation of CERCLA.  It reflects consultation on
> matters between EPA and the State of New Jersey and the role of
> the State of New Jersey as a support agency under CERCLA,
> pursuant to 40 C.F.R. 300.515(e), state involvement in selection of
> remedy.

(Enck Decl. ¶ 6(E)).  The Court agrees with PPPI that the Enck Declaration fails to specify the final decision to which this memorandum is tied.  Indeed, it is entirely unclear from the Enck Declaration whether the EPA/NJDEP Meeting Memo is pre-decisional.  Further, unlike with the USGS documents, there is nothing in the other material submitted by the United States that clearly establishes the final agency decision to which this document is tied and that it is pre-decisional.  The United States bears the burden of proving that the documents withheld on the basis of the deliberative process privilege fall within the scope of same.  The United States has failed to meet this burden with respect to this memorandum.  As a result, the United States is directed to produce same no later than **April 5, 2013**.

### 5. Balancing Test

Understanding that the United States must supplement its privilege log so that PPPI and the Court can confirm that certain documents are pre-decisional as well as deliberative, with the following exceptions, the Court finds that the documents described in the Enck and Kropp Declarations fall within the deliberative process privilege; the exceptions being the severable factual information contained in the Direct Contact Groundwater Values Chart and the EPA/NJDEP Meeting Memo (PO-EPA215396 and PO-EPA286869), all of which must be produced as described above.[11]  The Court's inquiry, however, does not stop here.  Instead, despite having determined that the vast majority of material identified by the United States is subject to the deliberative process privilege, the Court must conduct a balancing test to weigh the parties' competing interests.  As noted above, in conducting this test, the Court considers factors

---

[11] In this regard, except as otherwise stated herein, the Court finds that the United States has satisfied the three procedural requirements of the deliberative process privilege through the Enck and Kropp Declarations and has also established a *prima facie* case that the withheld documents are pre-decisional as well as deliberative.  In reaching this conclusion, the Court has focused on the arguments raised by PPPI challenging the United States' assertion of the deliberative process privilege.

such as "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Redland Soccer Club*, 55 F.3d at 854 (quoting *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994)) (internal quotation marks omitted); *see Ernstoff*, 183 F.R.D. at 153. As also noted above, in contrast to the threshold inquiry of whether the deliberative process privilege applies, where the government bears the burden of proof, once this threshold has been met, the party seeking discovery, here PPPI, "bears the burden of showing that its need for the documents outweighs the government's interest." *Redland Soccer Club*, 55 F.3d at 854.

Here, PPPI focuses on the following four considerations to establish that the aforementioned balancing test favors production:

> (1) the documents the United States seeks to protect appear to address the central factual issues in this case dealing with groundwater and source characterization that are the basis of the United States costs claims, (2) PPPI is entitled to the full discovery to defend itself against the government's lawsuit and allegations, (3) the public is entitled to know the transparent process by which the government assesses CERCLA liability and how it was assessed for the Pohatcong Valley, and (4) the United States is a plaintiff in this lawsuit seeking a money judgment from PPPI.

(PPPI Br. at 21-22 (Footnote omitted)). The Court finds that PPPI has failed to meet its burden. In this regard, while the Court finds that the withheld documents are relevant to this lawsuit and while the Court agrees with PPPI that the United States' role as a plaintiff seeking affirmative relief favor production (*see Ernstoff*, 183 F.R.D. at 153), the Court finds that when weighed, on balance the factors favor the United States' interest of nondisclosure.

With respect to the relevance of the withheld documents, contrary to the United States' assertions, the Court finds that the documents are more than marginally relevant to the claims at issue in this litigation.  For example, as PPPI notes, the relief sought by the United States is largely based on the United States' claims that the groundwater at the Site flows in a particular direction – claims clearly disputed by PPPI.  The documents being withheld by the United States based on the deliberative process privilege certainly contain information pertaining to groundwater flow at the Site and are obviously relevant to this case.

Nevertheless, the relevance of the documents alone is not sufficient to tip the balance in favor of production.  This is particularly true where, as here, PPPI has been given access to the underlying factual data supporting the EPA's decisions. In fact, the United States has represented that "PPPI already has the groundwater and soil sampling data underlying the agencies [sic] deliberations in the draft PRAPs and USGS published reports in its possession, as they were produced to PPPI as part of the United States' enormous production of electronic and hardcopy documents to date." (United States Br. at 13-14).  As noted above, the Court is requiring the United States to confirm this representation in a sworn statement from someone with knowledge of same.  Thus, here, PPPI not only has access to the publicly available documents, such as the final PRAP and three published USGS reports, but it also has access to the full pool of data available for use by the United States in making decisions relevant to the Site.  As such, PPPI can hardly be thought of as being made to accept on faith the EPA's published views on the groundwater issues at the Site.

Furthermore, while the United States is seeking affirmative judicial relief against PPPI in this matter, the Court also finds that this fact, even when coupled with the fact that the documents being withheld are relevant does not tip the balance in favor of production.  As just

43

stated, the relevance of the documents being withheld is offset by the fact that much of the information contained in the documents has already been produced to PPPI in other sources. Further, the other factors do not tip the balance in favor of disclosure.

For example, while the public has an interest in knowing the transparent process by which the United States assesses CERCLA liability and, more specifically, how that liability was assessed at the Site, that interest is largely satisfied by the measured, step-by-step process set forth in CERCLA and the regulations implementing same that the EPA must follow in assessing liability and selecting a remedial action to address contamination at Superfund sites like the Site at issue here.  In this regard, CERCLA and its implementing regulations do not permit the government's remedy selection process to be obscured by a veil of secrecy.  Instead, CERCLA mandates that the public be kept apprised of the process.  Indeed, CERCLA and its implementing regulations require the United States to release to the public for comment a PRAP, which describes the remedial alternatives analyzed by the EPA as well as the EPA's review of the alternatives against the nine criteria set forth in 40 C.F.R. §300.430(e) and the EPA's identification of and justification for the preferred remedial action.  After the public comment period expires, the EPA considers the new information generated during same, may reassess its initial remedial decision and ultimately memorializes its final selected remedy in a ROD.  Thus, CERCLA, itself, compels transparency in the remedy selection process and it is this transparent process that forms the basis of CERCLA liability.  This process was used by the government to develop and select a remedial plan for the Site.  As such, while the public may not have been included in all aspects of the EPA's decision making, they have not been kept in the dark with respect to the process used by the government to assess CERCLA liability at the Site.

Moreover, while the public certainly has an interest in transparency with respect to liability assessment under CERCLA, the government also has an interest in protecting its pre-decisional deliberations from disclosure.  Indeed, the deliberative process privilege developed "to prevent injury to the quality of agency decisions."  *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 44 Led.2d 29 (1975).  The privilege "recognizes 'that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinion would cease and the quality of administrative decisions would consequently suffer.'"  *Redland Soccer Club*, 55 F.3d at 854 (quoting *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C.Cir. 1994) (quotations and internal ellipses omitted)).  Here the EPA through the Enck Declaration and the USGS through the Kropp Declaration have shown how disclosure of the withheld documents would chill the candid free flow of information and ideas that underlies each group's decision-making process, thereby clearly hindering same.

Under these circumstances, the Court finds that, on balance, the government's interest in secrecy outweighs PPPI's interest in disclosure.  For the reasons stated above, PPPI has not met its burden of establishing otherwise.  Consequently, except as otherwise stated herein, the Court finds that the United States has properly withheld the identified documents pursuant to the deliberative process privilege.

## IV.    Conclusion

For the reasons stated above, the United States' motion for a protective order is GRANTED in part and DENIED in part.  An appropriate Order follows.


Dated:  March 19, 2013


                              s/Tonianne J. Bongiovanni
                              **HONORABLE TONIANNE J. BONGIOVANNI**
                              **UNITED STATES MAGISTRATE JUDGE**