NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **Civil Action No. 09-5692 (PGS)** |
| **v.** | **MEMORANDUM OPINION** |
| **PECHINEY PLASTIC PACKAGING, INC.,** | |
| **Defendant.** | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Plaintiff United States of America's (the "United States") Motion for leave to file a First Amended Complaint to (1) add the following new defendants to this matter: Bristol Meyers Squibb Company ("BMS"), Myset Investment Company ("Myset"), Citigroup, Inc. ("Citigroup"), MRC Holdings, Inc. ("MRC"), Rexam Beverage Can Company ("Rexam Beverage"), Albea Americas, Inc. ("Albea") and Defendant Property; and (2) modify the Prayer for Relief to include an express demand for the recovery of enforcement costs. Defendant Pechiney Plastic Packaging, Inc. ("PPPI") opposes the United States' motion to amend. The Court has reviewed the submissions of the parties and considers the United States' motion without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, the United States' motion to amend is GRANTED in part and DENIED in part.

### I.   Background

There is a lengthy history with regard to this matter. However, given the parties and Court's familiarity with this case, only the most pertinent facts are recited herein. Primarily, this

case is a cost recovery matter brought by the United States against PPPI pursuant to the

Comprehensive Environmental Response, Compensation, and Liability Act of 1980

("CERCLA"), based on the costs incurred by the United States in response to the release or

threatened release of hazardous substances at the Pohatcong Valley Groundwater Superfund Site

(the "Site").  The Site is located in portions of Washington Borough, Washington Township,

Franklin Township and Greenwich Township in Warren County.  It also involves property and a

manufacturing plant known as the Washington Facility.  Since the 1950s, the Washington

Facility has been owned and operated by numerous parties, including PPPI.

On November 6, 2009, the United States filed this 42 U.S.C. § 9607(a) action against

PPPI seeking to recover costs incurred or to be incurred responding to the release or threatened

release of hazardous substances at the Site.  In the late 1970s, the New Jersey Department of

Environmental Protection ("NJDEP") found elevated levels of trichloroethylene ("TCE") and

tetrachloroethylene also known as perchloroethylene ("PCE") at the Site. Between 1985 and

1989, NJDEP installed water lines to provide a municipal water supply in Washington and

Franklin Townships.

Beginning in 1988, the United States Environmental Protection Agency ("EPA")

undertook investigative measures to identify the existence and scope of the release or threat of

release of hazardous substances at the Site that imposes a threat of danger to the public health

and the environment.  In 1989, the Site was placed on the National Priorities List ("NPL"),

establishing EPA's long-term commitment to remedying the Site.  As part of EPA's overall

study and investigation of the site, EPA conducted a remedial investigation and a feasibility

study of three study areas known as Operable Units ("OUs").  OU1 addresses groundwater

contamination within Washington Borough and parts of Washington and Franklin Townships.

OU2 addresses groundwater contamination downgradient of OU1, starting at the west boundary of OU1 and continuing westward through parts of Franklin and Greenwich Townships.  OU3 addresses contaminated soil source areas within the boundaries of OU1 and is essentially comprised of a northern portion of OU1 that includes the Washington Facility.  When the United States initially filed this cost recovery action, it sought to recover in excess of $17 million in costs, plus interest.  By the end of 2011, these figures increased to over $24 million in costs and over $2 million in accrued interest.

On February 22, 2013, more than three years after this case was filed, the United States filed the instant motion to amend.  Through this motion, the United States seeks to add the aforementioned six companies as defendants, claiming that as current or former owners and/or operators of the Washington Facility at a time when there was a release or threatened release of hazardous substances at the Site, they are liable for recovery costs incurred at the Site under CERCLA 42 U.S.C. § 9607(a)(1) & (2).  The United States also seeks to add *in rem* claims against Defendant Property pursuant to CERCLA 42 U.S.C. § 9607(1) to secure the lien recorded by EPA in 2009.  Finally, the United States seeks to modify its Prayer for Relief to expressly demand the recovery of enforcement costs.

## II.    Arguments

The United States argues that it should be permitted to make the aforementioned amendments because they are not the product of undue delay, will not prejudice PPPI and are not futile.  With respect to the addition of the six companies listed above, the United States argues that it should be permitted to add them as defendants now because information recently provided through discovery forms the basis of the United States' proposed claims against them.  Indeed, the United States argues that its motion to add these defendants at this juncture is timely and

brought in good faith because it did not have a factual or legal basis to assert claims against these six companies until PPPI produced relevant discovery in the Spring of 2012.  The United States argues that PPPI's delay in producing information requested as early as June 2010 demonstrates that the timing of the instant motion resulted from PPPI's failure to more promptly produce the requested discovery.  (United States Reply Br. at 3).  In fact, the United States argues that it was not until May 2012 that it even obtained the documents containing the information from which it could formulate the proposed CERCLA claims it now seeks to assert against the six companies. Consequently, the United States contends that its motion to add said claims is timely and should be granted.

As to its proposed *in rem* claims against Defendant Property, the United States argues that these claims also are not the product of undue delay.  While the United States acknowledges that it filed a "Notice of Federal Lien" against the Property with the County Clerk of Warren County, New Jersey in August of 2009, it argues that it did not unduly delay in seeking to add the *in rem* claims to secure recovery on said lien because PPPI exercised its right to challenge the lien recorded by EPA in 2009 and the administrative challenge only concluded in May 2011.  As such, the United States claims that a majority of the time between the lien being filed and the present motion to amend resulted from PPPI asserting its due process rights protected by the Constitution.  Therefore, the United States claims that there has been no undue delay.

Further, the United States argues that PPPI will not be prejudiced by any of its proposed amendments.  With respect to the proposed addition of the six companies as defendants, while the United States acknowledges that their addition to this lawsuit will result in all parties having to expend additional resources litigating this matter, the United States argues that it will not impose an unreasonable burden on PPPI because the majority of discovery these new defendants

4

will seek has already been produced.  Indeed, the United States contends that both it and PPPI already possess the pertinent information concerning "the corporate structure of past owners and/or operators of the 'Washington Facility'" and, consequently, neither party will be burdened "by re-producing past productions to the proposed Defendants and supplementing their productions as would be necessary regardless of the outcome of the Motion."  (*Id*. at 4, 8).

In addition, the United States claims that because it intends to assert legal claims against the six companies under Section 107(a) of CERCLA, it will use similar evidence to prove its claims against all of the proposed defendants.  As a result, the United States argues that the addition of the six companies as defendants will not transform this matter from a straightforward cost recovery case into a farm more complex action with significantly more issues and claims. (United States Br. at 8).  Moreover, the United States argues that "the need for additional discovery does not conclusively establish prejudice."  (United States Reply Br. at 6 (quoting *Dole v. Arco Chemical Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (internal quotation marks omitted))).

Similarly, with respect to the *in rem* claims, the United States argues that there will be no prejudice because no additional discovery will be necessary in order for it to establish its *in rem* claims under Section 107(1) of CERCLA.  In this regard, the United States contends that the parties have already undertaken and produced discovery that establishes "the essential elements of the United States' *in rem* claim and any defenses thereto."  (*Id*. 10).  Furthermore, the United States argues that it has a legitimate basis for adding the *in rem* claims as the EPA Region 2 Judicial Officer ("RJO") already determined in response to PPPI's administrative challenge that "EPA had a reasonable basis to perfect a lien under Section 107(1) of CERCLA."  (*Id*. at 5, 10).

Accordingly, the United States contends that PPPI will not be prejudiced by the addition of the *in rem* claims to this matter.

Lastly, the United States argues that its proposed amendments are not futile.  In this regard, the United States contends that the factual allegations asserted in the proposed First Amended Complaint are sufficient to raise non-speculative CERCLA claims against the additional proposed defendants.  Specifically, the United States argues that when the Court, as it must, accepts "as true all allegations in the complaint and all reasonable inferences that can be draw therefrom, and view[s] them in the light most favorable to plaintiff[,]" the United States' proposed Section 107(a) claims under CERCLA are viable.  (*Id*. at 11 (citing *Miller v. Beneficial*, 844 F. Supp. 990, 1001 (D.N.J. 1993)).  Under these circumstances, given the liberal standard for amendments to the pleadings, the United States argues that PPPI cannot meet its "heavy burden" to establish that the United States' proposed amendments are futile.  (*Id*. at 11 (internal quotation marks and citation omitted)).

In contrast, PPPI argues that the United States' proposed amendments are untimely, prejudicial and, in some instances, futile.  With respect to undue delay and prejudice, PPPI argues that the United States' proposed CERCLA claims against the six companies is untimely and would be unduly prejudicial for several reasons.  First PPPI argues that the United States failed to exercise due diligence in seeking to add the six companies as defendants.  In this regard, PPPI argues that the United States has possessed and controlled the information necessary to assert claims against these companies for some time.  Indeed, PPPI argues that it is without dispute that on February 10, 2004, it provided the United States with information that had been requested pursuant to Section 104(e) of CERCLA, which identified the corporate structure and history of the prior owners and operators of the Washington Facility including most of the

6

companies at issue here.  PPPI argues that the United States could have asserted the claims it now seeks to bring based on this information, which was produced over nine years ago.  PPPI argues that the United States' decision to wait over nine years from when information identifying most of the six companies as prior owners and operators of the Washington Facility and "more than three years after its original Complaint was filed" to move to amend establishes that the United States' motion is untimely and the byproduct of dilatory conduct.[1]

Second, in addition to being untimely, PPPI argues that, if successful, the United States' proposed addition of the six companies as defendants would be prejudicial both because it would require PPPI to expend significant additional resources to conduct supplementary discovery regarding these defendants and because it would significantly delay the resolution of this matter. PPPI contends that it has already spent millions of dollars on discovery since the outset of this case and that the addition of the six companies would force it "to expend tens of thousands of additional dollars in further discovery[.]" (PPPI Opp. Br. at 7).  Additionally, PPPI claims that the resolution of this matter will necessarily be delayed if the proposed companies are added as defendants because the companies will need time to get up to speed and further discovery will have to be conducted.  PPPI argues that this delay could have been avoided if the United States had named these companies when it filed its original Complaint or at least had added them as defendants shortly thereafter.  In this regard, PPPI claims that had the companies been named defendants from the outset of this litigation or shortly thereafter, PPPI as well as the proposed

---

[1] PPPI also notes that the United States again received information about the prior owners and operators of the Washington Facility in August 2010 when PPPI identified most of the proposed defendants in its responses to the United States' First Set of Interrogatories.  (PPPI Opp. Br. at 5).  In addition, PPPI notes that the United States became aware of Albea's affiliation with the Washington Facility on July 2, 2010, when the United States received a notice informing it of a change in ownership.  (*Id*. at 6).  Further, PPPI claims that the United States learned of Rexam Beverage's involvement at the Washington Facility at least as early as August 12, 2011, if not sooner, when it received Rexam Beverage's response to the United States' third-party subpoena.  (*Id.*)  As such, PPPI contends that there is no excuse for the United States to have waited until late February 2013 to have moved to amend its Complaint to add these companies as defendants to this action.

defendants could have prepared and produced discovery requests and responses simultaneously, thereby maximizing efficiencies in the discovery process.  In contrast, if the companies are added now, they will be entitled to their own discovery, some of which has already been produced, resulting in a circular and repetitious process that wastes both the parties and the Court's resources.  PPPI argues that this prejudicial waste of resources could have been avoided if the United States had exercised due diligence and named the six companies as defendants earlier in this litigation.

Moreover, PPPI argues that the prejudice will be compounded by the fact that the addition of the six proposed companies as defendants will not only require further discovery, which in and of itself will significantly increase the costs of litigating this matter and delay the resolution of same, but will also result in additional dispositive motion practice.  Indeed, PPPI claims that the addition of the six companies to this matter will result in new issues being made part of this litigation.  In effect, PPPI claims that adding the proposed companies to this case will transform this relatively straightforward cost recovery matter into a far more complex case with additional sets of claims, counterclaims, and cross-claims.  PPPI argues that the addition of such claims at this late juncture will unnecessarily multiply "the expenses and time burdens on PPPI" and further delay this action.  (*Id.* at 10).

Similarly, PPPI contends that the addition of the United States' proposed *in rem* claims against Defendant Property will also prejudicially harm PPPI because the United States' request to add same is untimely.  In this regard, PPPI claims that the United States has failed to provide any justifiable "rationale for waiting until now to add these *in rem* claims[.]"  (*Id*. at 15).  PPPI argues that because the United States could have asserted these claims since 2009, there is no reason for its delay.  Further, PPPI argues that the United States' proposed *in rem* claims "have

not been subjected to discovery by PPPI since they were not included within the pending action." (*Id*.)  For example, given Albea's assertion of being a bona fide prospective purchaser, PPPI argues that if the United States' proposed *in rem* claims are added, the parties will have to conduct "discovery about the specific actions and knowledge of Albea in proceeding with the purchase of the Washington Plant[.]"  (*Id*. at 15).  As a result, PPPI argues that allowing the United States to add the *in rem* claims at this juncture would not only further delay and complicate the resolution of this case but would require PPPI to expend both significant additional resources and time litigating this matter as PPPI would be forced "to engage in new discovery relating to the *in rem* claims and its defenses thereto after having spent years and millions of dollars to move this action toward resolution."  (*Id*. at 15-16).[2]

In addition, PPPI argues that the United States' motion to add certain of the proposed defendants is futile.  For example, PPPI argues that the United States' claims against BMS and Myset are futile because in order to succeed on its proposed claims against these entities, the United States would have to show that there was a release or threatened release of a hazardous substance during the timeframe when the companies were involved with the Washington Facility approximately 60 years ago.  PPPI argues that "[t]he United States is well aware of the fact, given the discovery to date, that no information has been found that demonstrates the timing or specific release source of TCE."  (*Id*. at 18)  As such, PPPI claims that pursuing BMS "on the hope that discovery aimed at them will produce sixty year old records of chemical release and/or corporate involvement in hazardous substance decisions at the Washington Plant from a period when chemicals were not regulated as they are today and none have been found thus far, is futile."  (*Id*.)

---

[2]In addition, PPPI argues that the United States has no basis for asserting *in rem* claims at this time because the United States is aware that Albea qualifies "as a bona fide prospective purchaser under CERCLA Section 107(r)" and therefore the *in rem* claims will be "subject to summary judgment under CERCLA."  (*Id*. at 14 n.5).

Likewise, PPPI argues that the United States' proposed claims against Rexam Beverage are futile based on the corporate relationship, or lack thereof among PPPI, American National Can and Rexam Beverage.  Specifically, PPPI notes that it acquired the Washington Facility as part of an asset transfer from American National Can for their tube or beauty business in 1999. Rexam Beverage did not acquire the beverage can business from American National Can until almost a year later, by which time "both the overall tube business, and the Washington Plant itself, were not part of American National Can, and had never been part of the beverage can operations." (*Id*. at 19).  Given this sequence of events, PPPI argues that the asserted claims against Rexam Beverage must fail.  Finally, PPPI argues that the United States proposed claims against Albea are futile as Albea has complied "with each element of the bona fide prospective purchaser defense provided in CERCLA Section 107(r)(1)." (*Id*. at 19-20).  Further, PPPI argues that the United States is "well aware that Albea had no role in creating the alleged conditions that give rise to the United States cost recovery claims and that Albea is not the successor-in-interest of PPPI or any other prior owner or operator of the Washington Plant." (*Id*. at 20-21).  As such, PPPI argues that the United States' proposed claims against Albea are futile and should not be added to this case.

## III.   Analysis

### A.  Standard for Leave to Amend

Pursuant to FED.R.CIV.P.  ("Rule") 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v.* Davis, 371 U.S. 178, 182 (1962); *Alvin v.* Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).  Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, [or] futility of the amendment." *Id.* However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *See Long*, 393 F.3d at 400. Delay alone, however, does not justify denying a motion to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate. *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

Further, a proposed amendment is appropriately denied where it is futile. An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (Internal quotation marks and citations omitted). In determining whether an amendment is "insufficient on its face," the Court employs the motion to dismiss standard under Rule 12(b)(6) (s*ee Alvin*, 227 F.3d at 121) and considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

To determine if a pleading would survive a Rule 12(b)(6) motion, the Court must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of the party asserting them. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

Although a pleading does not need to contain "detailed factual allegations," a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Additionally, in assessing a motion to dismiss, although the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### B.  Discussion

As an initial matter, the Court notes that PPPI has not raised any specific objections to the United States' request to modify the Prayer for Relief to include an express demand for the recovery of enforcement costs.  The Court sees no independent reason to deny the United States' motion to amend in this regard.  As a result, in light of the fact that no objection has been explicitly raised with respect to the United States' request to amend its Prayer for Relief, and given the liberal standard for amendments to the pleadings set forth in Rule 15(a)(2), the Court shall permit the United States to make this amendment.

Turning next to the United States' request to add the aforementioned six companies as defendants and to add *in rem* claims against proposed Defendant Property, the Court finds that the United States' request to add same at this juncture is untimely and that the addition of these proposed defendants and the claims against them would be prejudicial to PPPI.  As the United States and PPPI are well aware, this case has been pending for nearly four years.  It had been pending for over three years when the United States' motion to amend was filed.  During that time, the parties have engaged in significant discovery, resulting in both the parties and the Court expending significant time, labor and/or monetary resources during same.  In June 2013, the District Court indicated that It intended to try this case no later than the Summer of 2014.  As such, this Court is working with the parties to get this case trial ready.  Fact discovery is set to close in mid-January 2014 with expert discovery commencing shortly thereafter.  While the United States argues that the addition of the six proposed companies at this juncture will not require extensive additional discovery.  The Court disagrees.  While there would certainly be an overlap with the discovery already produced, the new companies will be entitled to conduct both paper discovery and depositions of their own.  Moreover, PPPI and the United States would be

entitled to seek discovery from the new parties and this discovery would involve information dating back for over half of a century.  Given the scope of the new discovery at issue, it can hardly be described as insubstantial.  Instead, it is clear to the Court that the addition of the six new companies would require PPPI to expend significant additional resources conducting discovery and preparing for trial.  Thus, while the need for additional discovery may not always establish prejudice, here the Court finds that the addition of the six proposed companies would be prejudicial to PPPI.

Moreover, the Court finds that the prejudice is undue in light of the United States' delay in seeking to add the six companies to this lawsuit.  While the United States maintains that it did not have the information necessary to assert CERCLA claims against the six companies until Spring 2012, the Court finds this argument to be unavailing.  First, even if true, the United States offers no explanation as to why it waited nearly a year after receiving the allegedly critical discovery from PPPI to move to amend to add the six companies.  While the Court appreciates the complexity of this case and the fact that the United States would have needed some time to have reviewed the discovery provided by PPPI before it would have been in a position to move to amend, the Court finds the delay at issue here unreasonable.  Second, the Court remains unconvinced that the United States could not have moved to amend earlier.  As PPPI notes, in February 2004 it identified for the United States the corporate structure and history of the prior owners and operators of the Washington Facility when it provided the United States with information that had been requested pursuant to Section 104(e) of CERCLA.  As such, as early as February 2004, the United States had access to information forming the basis of its claims against many of the proposed corporate defendants.  Further, the United States was again provided with information concerning the prior owners and operators of the Washington Facility,

14

including most of the proposed new defendants, in August 2010 when PPPI identified same in its responses to the United States' First Set of Interrogatories.  Likewise, discovery received by way of subpoena practice from third parties like Rexam Beverage in August 2011, provided the United States with information concern the past owners and operators of the Washington Facility.  Finally, the United States should have been aware of its proposed claims against Albea in at least July 2010, when the United States received notice of the change of ownership of the Washington Facility.  Under these circumstances, the Court finds that the United States was not reasonably diligent in failing to move to amend sooner.

Further, the United States' delay is not only prejudicial to PPPI, but also places an unwarranted burden on the Court.  The Court's experience with this case indicates that the addition of the six proposed companies at this time would not only require the parties to engage in significant extra discovery, but would also require the schedule entered in this matter to be further extended.  For example, the Court cannot practically see fact discovery closing in January if the six companies are added to this matter.  More importantly, absent the Court essentially providing this one case Its undivided attention, an impossibility given the Court's current civil and criminal caseload, it will be nearly impossible to get this case trial ready for the Summer of 2014 if the six companies are added as defendants.  In reaching this conclusion, the Court is mindful of the significant discovery disputes that have already arisen between the United States and PPPI during the course of this litigation.  Multiplying such disputes by any degree is noteworthy.  Furthermore, the addition of the six proposed companies will inevitably increase dispositive motion practice before the District Court.  Undoubtedly, some if not all of the proposed defendant companies will move to dismiss the United States' proposed Amended Complaint.  In addition, the Court has to presume that any surviving company will file a motion

for summary judgment as well.  All of these motions, in addition to any summary judgment motions filed by the United States and PPPI, will have to be decided by the District Court.  The burden of deciding these motions and keeping to the current schedule is impractical, not to mention unfair for the Court.[3]  Consequently, the United States' request to add the six companies as defendants is denied.

The United States' proposed addition of *in rem* claims against Defendant Property is similarly problematic.  As with the addition of the United States' proposed claims against the six companies listed above, the Court finds that the addition of the *in rem* claims against Defendant Property will also require further discovery.  The United States' argument to the contrary is not persuasive.  The *in rem* claims that it seeks to add have not been subject to discovery because, simply put, they have not been part of this case.  While the United States claims that the parties have already undertaken and produced discovery that establishes "the essential elements of the United States' *in rem* claim and any defenses thereto[,]" if added, it would only be fair for PPPI to be provided with the opportunity to conduct discovery concerning same.  (United States Reply Br. at 10).  While the Court believes that said discovery would be less extensive than the discovery required by the addition of the six proposed corporate defendants, the Court finds that it would not be insubstantial.

Furthermore, the Court finds no justifiable reason why the United States waited until late February 2013 to move to amend to assert the *in rem* claims.  While the United States argues that it has not unduly delayed in seeking to add the *in rem* claims against Defendant Property because

---

[3] The Court notes that Its denial of the United States' motion to add the companies to this matter does not prevent the United States from bringing claims against those companies in a separate action.  The Court further recognizes that requiring the United States to do so will result in certain inefficiencies.  The Court, however, finds that those inefficiencies are justified under the circumstances presented here.  The United States may of course, as it indicated, file a new action against the six aforementioned companies and then seek to consolidate said case with this matter. Should the United States do so, the Court shall address the motion to consolidate once it is filed.

the majority of the time between the lien being recorded against the Property in August 2009 and the present motion resulted from PPPI asserting its due process rights protected by the Constitution, that argument fails to properly take into account the fact that PPPI's administrative challenge with respect to the lien concluded in May 2011.  Thus, even assuming that it was reasonable for the United States to wait until the close of PPPI's administrative challenge to move to amend, the United States still fails to take into account or provide any justification for why it waited approximately 21 months thereafter to seek to add the *in rem* claims.  Under these circumstances, the Court finds that the United States' request to add the *in rem* claims at this juncture would be prejudicial to PPPI.  As a result, the United States' request is denied.[4]

**IV.     Conclusion**

For the reasons set forth above, the United States' motion to amend is GRANTED in part and DENIED in part.  An appropriate Order follows.

Dated:  September 27, 2013

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] In light of the findings outlined above, the Court does not reach the parties' arguments concerning the alleged futility of the United States' proposed amendments.

17